UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-565-RJC
3:19-cr-74-RJC-DSC-1

| | |
|---|---|
| MOHAMMAD AMIR ELLER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1).

### I. BACKGROUND

Petitioner was charged in the underlying criminal case with: marijuana trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846 (Count One); and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D) (Count Two). (3:19-cr-74 (CR) Doc. No. 1) (Bill of Information); see (CR Doc. No. 9) (Waiver of Indictment). The Government filed an Information pursuant to 21 U.S.C. § 851 setting forth Petitioner's prior state convictions for possession of between five and 50 pounds of marijuana and first-degree burglary. (CR Doc. No. 2).

Petitioner pleaded guilty pursuant to a written Plea Agreement in exchange for charging concessions. (CR Doc. No. 8 at ¶¶ 1, 4). The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges and, if applicable, any Information pursuant to 21 U.S.C. § 851." (Id. at ¶ 3).

1

Petitioner admitted that he is, in fact, guilty as charged in Counts One and Two. (Id. at ¶ 1). Petitioner stipulated that the § 851 Information regarding two or more prior convictions is accurate and valid, and he agreed not to challenge the same. (Id. at ¶ 4). The Plea Agreement explains that the "statutory minimum and minimum sentences **for each count**" is "a mandatory statutory sentence of not more than ten (10) years of imprisonment," which would be reduced to "no more than five (5) years of imprisonment" upon the Government's withdrawal of the § 851 Information at sentencing. (Id.) (emphasis added). The parties agreed to jointly recommend: the amount of a mixture and substance containing a detectable amount of marijuana that was known to or reasonably foreseeable by Petitioner was "in excess of one thousand (1,000) kilograms but less than three thousand (3,000) kilograms, resulting in a base offense level of 30;" the plea is timely for purposes of U.S.S.G. § 3E1.1(b) if applicable; and the career offender or armed career criminal guideline may be used to determine the sentence, if applicable. (Id. at ¶ 7). The parties remained free to argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well a departures or variance from the applicable guideline range at sentencing. (Id.). The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (Id. at ¶ 6).

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose,

including to determine the applicable advisory guideline range or the appropriate sentence. (Id. at 10). The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. (Id. at 11).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (Id. at ¶¶ 12-14). The Plea Agreement contains an express waiver of Petitioner's right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 15-16). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id. at ¶ 22).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From at least as early as in or about 2010 to in or about December 2018, in Gaston County, within the Western District of North Carolina, and elsewhere, the Defendant, MOHAMMAD AMIR ELLER, did knowingly and intentionally conspire and agree with other persons, known and unknown to the United States, to distribute and to possess with intent to distribute one thousand (1,000) kilograms or more of marijuana, a Schedule I controlled substance.
>
> On or about January 3, 2019, in Gaston County, within the Western District of North Carolina, the Defendant, MOHAMMAD AMIR ELLER, did knowingly and intentionally possess with intent to distribute marijuana, a Schedule I controlled substance.

(CR Doc. No. 4 at 1-2) (paragraph numbers omitted).

On April 11, 2019, a Rule 11 hearing came before the Honorable David Cayer, United States Magistrate Judge. (CR Doc. No. 40). Petitioner stated, under oath, that he received a copy of the Information and discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him, including the 10-year maximum sentence that would be reduced to a five-year maximum if he complies will all the terms of the Plea Agreement. (Id. at 5-6). Petitioner also agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights. (Id. at 7). He discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine his sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. (Id.). Petitioner acknowledged the rights he was waiving by pleading guilty and stated his understanding that the case would proceed directly to sentencing. (Id. at 8-9).

The Plea Agreement was summarized in open court. (Id. at 9-12). Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. (Id. at 12-13). Petitioner stated that he read the Factual Basis, understood it, and agreed with it. (Id. at 13). Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (Id.). Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel, who had done a "[g]ood job." (Id.).

The Presentence Investigation Report's (PSR) scored the base offense level as 30 because the offense involved a detectable amount of marijuana in excess of 1,000 kilograms but less than

4

3,000 kilograms pursuant to U.S.S.G. § 2D1.1(a)(5). (CR Doc. No. 16 at ¶ 32). Two levels were added because Petitioner maintained a premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12), and three levels were added because Petitioner was a manager or supervisor of a criminal activity involving five or more participants or was otherwise extensive pursuant to U.S.S.G. § 3B1.1(b). (Id. at ¶¶ 33, 35). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 32. (Id. at ¶¶ 39-41). Petitioner had 13 criminal history points a criminal history category of VI. (Id. at ¶¶ 60-61). The resulting advisory guidelines range was 210 to 262 months of imprisonment, however, this was reduced to 120 months of imprisonment due to the statutory maximum sentence for each count. (Id. at ¶ 92). Accordingly, the advisory guideline range was 120 months of imprisonment followed by four years of supervised release. (Id. at ¶¶ 92, 96). The PSR notes that, absent the Plea Agreement, the § 851 Information would have increased the Petitioner's mandatory statutory sentenced to not more than 10 years of imprisonment. (Id. at ¶ 93).

Defense counsel filed PSR objections challenging the two-level adjustment for maintaining a premises for distributing or manufacturing a controlled substance, and the three-level role adjustment. (CR Doc. No. 15).

A sentencing hearing came before the Court on December 19, 2019. Petitioner agreed that he read the PSR, understood it, and had enough time to review it with counsel. (CR Doc. No. 38 at 2-3). Defense counsel withdrew PSR objections and the Government withdrew the § 851 Information. (Id. at 3). The resulting guideline range was 120 months' imprisonment, *i.e.*, 60 months per count. (Id.). The parties explained that their intent under the Plea Agreement was for the Petitioner to receive a total 60-month sentence, with the two counts running concurrently rather than consecutively. (Id. at 4-6). The Court expressed skepticism about the appropriateness of a 60-

5

month sentence in light of the record, and Petitioner's criminal conduct. (Id. at 6-7). The sentencing hearing was accordingly continued. (Id.).

The case again came before the Court for sentencing on October 20, 2020. (CR Doc. No. 39). The Court noted that it had continued the sentencing hearing "because Mr. Eller may have wished to move to withdraw his plea and go to trial" due to the parties' misunderstanding about the guideline range, but that Petitioner "has not chosen to do that." (Id. at 9-10). Defense counsel noted that, even if the PSR objections succeeded, the advisory guideline range would remain 120 months' imprisonment. (Id. at 3). Defense counsel argued that Petitioner should receive a five-year sentence followed by five years of probation or supervised release because: Petitioner's acceptance of responsibility was significant; although the stipulated drug amount was between 1,000 and 3,000 kilograms, the PSR supported a much lower amount; there was insufficient evidence to support the role adjustment; the premises enhancement was intended to apply to crack houses; the criminal history score overstates the Petitioner's record; Petitioner's family circumstances warrant leniency; and Petitioner has always done well on supervised release. (Id. at 3-7). During his allocution, Petition admitted that he sold marijuana and told the Court that he has children and would comply with an ankle monitor. (Id. at 7). The Government requested a guideline sentence notwithstanding the earlier sentencing hearing and joint sentencing recommendation because there was no solid basis meriting a variance, due largely to Petitioner's extensive criminal history. (Id. at 8-9). Although the case is serious and Petitioner's criminal history is "very serious," the Court decided to grant a slight variance in light of the parties' "mistaken assumption" underlying the Plea Agreement. (Id. at 9-10). It reduced the offense level to 25, which decreased the bottom of the advisory guideline range to 110 months' imprisonment. (Id. at 11). The Court sentenced Petitioner to 110 months' imprisonment (60 months for Count

6

One and 50 months for Count Two, consecutive) followed by four years of supervised release. (Id. at 11-14); (CR Doc. No. 31). Petitioner did not appeal.

Petitioner filed the instant pro se § 2255 Motion to Vacate on October 19, 2021.[1] (Doc. No. 1). He argues that counsel was ineffective for (restated and renumbered): (1) misadvising and coercing him, which rendered the guilty plea involuntary; (2) failing to argue that his prior convictions do not qualify for the career offender enhancement or for the § 851 enhancement under the First Step Act; (3) failing to argue that the Government breached the Plea Agreement by refusing to withdraw the § 851 enhancement; and (4) failing to object to the drug amount. He asks that the Court grant him a hearing, appoint him a new lawyer, and resentence him to five years' imprisonment. The Government filed a Response arguing that the Motion to Vacate be dismissed or denied because Petitioner has failed to demonstrate deficient performance or prejudice. (Doc. No. 5). Petitioner has not replied and the time to do so has expired. See (Doc. No. 6).

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The appointment of counsel is not warranted. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (there is no constitutional right to the appointment of counsel in a § 2255 proceeding); 18 U.S.C. § 3006A(a)(2)(B) (the court may appoint counsel to a financially eligible habeas petitioner if justice so requires); Rules 6(a) and 8(c), 28 U.S.C. foll. § 2255.

### III. DISCUSSION[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears

---

[2] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If a petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### (1) Involuntary Plea

Construing the Motion to Vacate liberally, Petitioner appears to argue that his guilty plea was involuntary because counsel misadvised him that he would receive a maximum sentence of five years' imprisonment, and "coerced [and] forc[ed]" him to plead guilty. (Doc. 1-1 at 9). Petitioner contends that, "but for counsel error he would have never pleaded guilty and instead would have went [sic] to trial…." (Doc. No. 1-1 at 9).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Petitioner's claim that counsel's ineffective assistance rendered his guilty plea involuntary

9

is conclusively refuted by the record. Petitioner stated under oath at the Rule 11 hearing that he understood that his sentencing exposure for each count was up to 10 years' imprisonment with the § 851 enhancement, and that this would be reduced to no more than five years' imprisonment if the § 851 enhancement was withdrawn at sentencing. (CR Doc. No. 8 at ¶ 4); (CR Doc. No. 40 at 5-6). Petitioner further agreed that, if the sentence was more severe than he expected, or if the Court did not accept the Government's recommendation, he would not have the right to withdraw his plea. (CR Doc. No. 40 at 7). He admitted that he is guilty of Counts One and Two, and that the guilty plea was freely and voluntarily entered without threats, coercion, or promises other than the terms of the Plea Agreement. (Id. at 13). The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences, including the possibility that the sentence could exceed the parties' expectations. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Moreover, Petitioner has failed to demonstrate prejudice. He contends that he would not have pleaded guilty and would have proceeded to trial but for counsel's allegedly deficient performance, however, he does not seek to withdraw his plea as § 2255 relief. He asks only to have his sentence reduced. Nor would it have been rational for Petitioner to withdraw his plea and proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis and PSR, and the benefits Petitioner received by pleading guilty, including charging concessions, the

10

Government's withdrawal of the § 851 enhancement, and the three-level reduction for acceptance of responsibility. Petitioner's present self-serving claim of prejudice is belied by the record and is rejected. Accordingly, the Petitioner's claim that ineffective assistance of counsel rendered his guilty plea involuntary is denied.

**(2) Sentencing Enhancements**

Next, Petitioner contends that counsel was ineffective for failing to argue that his prior convictions do not qualify him for the career offender enhancement or a § 851 enhancement, and for failing to raise the First Step Act. (Doc. No. 1 at 4,-5); (Doc. No. 1-1 at 5-7).

These claims are conclusively refuted by the record. Petitioner did not receive a career offender enhancement or any other Chapter Four enhancement, so counsel cannot be deemed ineffective for failing to object to such. (CR Doc. No. 16 at ¶ 38). Nor did the Petitioner receive an enhanced sentence based on his prior convictions. Although the Government filed an § 851 Information, it was withdrawn at the December 19, 2019 sentencing hearing. (CR Doc. No. 38 at 3). Moreover, the First Step Act does not apply to Petitioner's case. The First Step Act only applies to "covered offense[s]," *i.e.*, a violation of a criminal statute that was modified by certain provisions of the Fair Sentencing Act. Terry v. United States, 141 S.Ct. 1858, 1862 (2021). Covered offenses include violations of §§ 841(b)(1)(A) and (B), but not the § 841(b)(1)(D) offense to which Petitioner pleaded guilty. See United States v. Smith, 810 F. App'x 222, 223 (4th Cir. 2020) (denying a motion for sentence reduction under the First Step Act because "the Fair Sentencing Act did not modify the statutory penalty for [21 U.S.C. §§ 841(a)(1) and 846] which is found in 21 U.S.C. § 841(b)(1)(D)."). Petitioner has failed to demonstrate that counsel performed deficiently by failing to raise any of these frivolous arguments, or that he was prejudiced in any way. Therefore, these claims are denied.

**(3) Breach of the Plea Agreement**

Next, Petitioner contends that counsel was ineffective for failing to argue that the Government breached the Plea Agreement by refusing to withdraw the § 851 enhancement. (Doc. No. 1-1 at 7-8). This claim is based on a faulty factual premise because, as previously discussed, the Government did withdraw the § 851 enhancement. <u>See</u> Section (2), *supra.* Accordingly, this claim is denied.

**(4) Drug Amount**

Finally, Petitioner contends that counsel was ineffective for failing to object to the drug amount at sentencing. He contends that the Court relied on a drug amount "that no one had ever testified too [sic] in Court [and which] Movant never agreed to…" in violation of the Plea Agreement and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).[3] (Doc. No. 1 at 8); (Doc. No. 1-1 at 9).

This claim is conclusively refuted by the record. The Petitioner admitted as part of the knowing and voluntary Plea Agreement that the parties would jointly recommend that the amount of marijuana that was known to, or reasonably foreseeable, by him was "in excess of one thousand (1,000) kilograms but less than three thousand (3,000) kilograms, resulting in a base offense level of 30." (CR Doc. No. 8 at ¶ 7). He further admitted in the Factual Basis that he "did knowingly and intentionally conspire and agree with other persons … to distribute and possess with intent to distribute one thousand (1,000) kilograms or more of marijuana…." (CR Doc. No. 4 at 1-2). Despite these agreements, counsel argued at the second sentencing hearing that the stipulated amount was exaggerated. (CR Doc. No. 39 at 4). Counsel cannot be deemed ineffective for

---

[3] "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490.

deciding not to file written objections on this point, or to further belabor it at sentencing because it would have contradicted the Plea Agreement and Factual Basis, and may have jeopardized the benefits Petitioner received as a result of his plea. See Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law"); Fleischer v. United States, 2021 WL 2517378, at *6 (W.D.N.C. June 18, 2021) (counsel cannot be deemed ineffective for failing to present arguments and evidence that would conflict with the knowing and voluntary guilty plea, plea agreement, and factual basis). Nor was counsel ineffective for failing to argue Apprendi, as no fact increasing the statutory maximum was at issue. Any suggestion that the Court exceeded its sentencing authority by sentencing Petitioner to 60 months for Count One and 50 months for Count Two, consecutive, is mistaken. The Court was authorized by statute to impose up to 60 months' imprisonment for each count. See 21 U.S.C. §§ 841(b)(1)(D), 846. Moreover, there is no reasonable probability that any further objection or argument on these meritless points would have resulted in a sentence lower than the downward variance that counsel achieved. Accordingly, Petitioner's claim that counsel was ineffective for failing to object to the drug amount, or to raise an Apprendi objection is denied.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is denied on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338

(2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: March 7, 2022

Robert J. Conrad, Jr.
United States District Judge

14

Case 3:19-cr-00074-RJC-DSC   Document 41   Filed 03/07/22   Page 14 of 14